Good morning, Your Honors. Good morning. Your Honor, this case presents the issue whether Petitioner can reasonably relocate in India. He had lived in Delhi for quite some time, had he not? That's correct, Your Honor. However, in 1994, he was stopped at a checkpoint, and he was able to escape from the police. The checkpoint in the Punjab? That was, so far my understanding is concerned, at the border of New Delhi and Haryana State, Your Honor. Okay. And he was, I believe, on his way to his hometown, and he was stopped. Police followed him at his home, and finding him not at his home, he was — police arrested his brother, younger brother Jatinder. And thereafter, Your Honor, he relocated in UP, where he resided approximately for four-and-a-half years. Peaceably? I'm sorry, Your Honor. Did he reside there peaceably? So, Your Honor, he had no problem because he wasn't hiding. The moment he came out to attend the funeral of his wrestling coach, a photograph was published in newspaper. Police again followed him, Your Honor. They went to his home. Several raids were conducted. And finding that he would not be able to live peacefully in India, he was able to came to the United States. The funeral, though, was back in Punjab State, was it not? I'm sorry, Your Honor? The funeral was back in Punjab State? That was in New Delhi, Your Honor. Oh, in New Delhi. Okay. And then the picture was published, what, nationwide? Your Honor, the record shows that it was in several newspapers. I am not really sure if they were local newspapers or of national fame. That I don't know. Were any of the photos introduced into the record? It is in the record, Your Honor, yes. Okay, but do we know what newspaper it was published in? I don't know the name, Your Honor, but it is part of the record. Well, we have a picture that he says was in a newspaper, but we don't know where the newspaper was. And then he says as a result of that, the police went, what, back to his old house in the Punjab where his parents were? That was in Haryana, Your Honor, because in 1986, after suffering persecution in the State of Punjab, the family and practitioner moved to Haryana State. It's a neighboring state. Okay. So that's where the police went to. That's correct, Your Honor. Okay. And, Your Honor, we submit that he will not be able to live peacefully in Punjab or Haryana or any other state because he attempted to live in different states. He lived in Punjab. The family experienced persecution. The family and practitioner moved to Haryana. In Haryana, he was arrested in 1992 and also had trouble in 1994 when he was stopped at a checkpoint. From there, he lived in Delhi for a few days and moved to UP. Counsel, how do we, assuming that this does, in fact, constitute evidence of persecution in the early 1990s, how do we square the immigration judge's consideration of the country condition reports at the time of the hearing, which essentially reported that the police aren't looking any longer for any of the actually suspected of terrorist acts and acts of violence in support of Khalistan? Your Honor, the record shows several incidents where police arrested ordinary members, Your Honor. On page 856, six Dalhousie activists were arrested for marching on the anniversary of Operation Blue Star. And on the same page, Your Honor, please crack down on members of Dalhousie. And page 858 shows illegal arrests followed the arrest of Jaktar Singh Hawara. So, Your Honor, these arrests take place as late as in 2005. They were ordinary members. They were not high-profile terrorists or high-profile leaders. They were ordinary members, Your Honor. These things still take place. There are evidence of extrajudicial killings. And what was Mr. Kumar's alleged political affiliation when he was active here? Was he an actual leader of a group? You know, he was not member but supporter of a Khalid al-Man party. Okay, so he was not even a member, but he was just generally supporting. Like his father. You know, his father was a member, but he was supporting this party. This is just a quick clarification. This is a case where the immigration judge found the petitioner credible. Correct, Your Honor. Yes, that's correct. So his credibility is not in question. No, Your Honor. Because he found him credible, we assume that what he testified to is correct. Correct, Your Honor. Yes. And the I.J. also found that what happened to him constituted persecution within the meaning of the law. That's correct, Your Honor. The issue that the I.J. departed from the petitioner's position on was whether he could safely relocate somewhere in India and be away from any persecution. Is that correct? That's correct, Your Honor. Okay. Your Honor, we submit that the conditions in India have not changed, extrajudicial killings take place. Security forces access our routine. Custodial deaths take place on a regular basis. And violence is not part of one state. It is everywhere. In that atmosphere, it is not reasonable for the respondent to relocate. We submit that he will not be permitted to peace or live in peace in any state. He tried before. He lived in Punjab, moved from there to Haryana, and from there to New Delhi, and then lived peacefully four years in hiding in the State of UP. The moment he came out, he was again troubled. We submit that he will not be able to relocate. Okay. We have about three minutes left of your time. Thank you for your argument. Thank you. We'll hear from the government at this time. Good morning, Your Honors. May it please the Court. My name is Tracy McDonald from the United States Department of Justice, Office of Immigration Litigation. Counsel for the Respondent, the Attorney General. The Petitioner in this case claims to have a well-founded fear of being persecuted if returned to India. He didn't just claim that. The immigration judge said he had it, right? Yes. The immigration judge found that he did prove past persecution. However, a well-founded fear of future prosecution is refuted based on the fact that he could reasonably relocate within India. And that's the government's burden, is it not? Yes. What did the government offer in front of the IJ to show that the Petitioner could safely relocate? Well, the IJ conducted individualized analysis of various country reports. Now, my question is, what evidence did the government offer to establish that the Petitioner could safely relocate within India? The Petitioner testified to living in various countries. You're not addressing my question. What evidence did the government offer to show that the Petitioner could safely relocate? I'm looking for a list. Okay. The 2004 State Department Country Report on Human Rights Practices. This is the report that showed that Indian police don't actively look for these kind of individuals outside of the Punjab. Correct. Okay. What else? The 2004 United Kingdom Home Office India Country Report, reports from Amnesty International, Human Rights Watch reports. Do all of these essentially say the same thing? Yes, Your Honor. And that is that it is possible for someone to live safely in another area? Yes. Okay. Now, in his opening argument, your opponent cited the places in the record where there, he contends, and he says 856 and 858, where there were arrests of ordinary adherence to Sikhism outside of the Punjab. Do you agree with that? Yes, Your Honor. Your Honor, however, this particular and this Petitioner in particular never experienced. He lived in two or three different areas within India outside of the Punjab, worked in these areas, and never experienced persecution or arrests. Also, in the Petitioner's testimony, he testified that each time he was arrested or persecuted, his father was also arrested and persecuted with him. And the record shows that his father continues to live in India free from any persecution, harm, yet he was alongside with the Petitioner every time every time he was arrested. So I don't see his claim upon. That's a fair point. What's your response to Petitioner's counsel argument that when he was living, I guess, in the New Delhi area, the Delhi area, that he was in, A, he said he was in hiding, and, B, when he came out to attend a friend's funeral or a funeral, his picture was in the paper and the police identified him and came after him? I'm not, my understanding of the Petitioner's testimony is not that he was in hiding when he was in New Delhi, and he was openly working, wrestling, and each time he had police in some way coming after him during this time, they always went to, they never came to the area he was in. It was always to where they believed he was or where they believed he was living in Punjab. So what you're saying is that he himself testified that when he was living in these other areas, he was outside working and doing other activities which made him visible? Not necessarily in hiding, yes. Do you have some record sites for this? You can supply them later if you'd like. Yes, I can do that, Your Honor. The IJ, as the IJ and the board probably noted, there is nothing in the record to support the Petitioner's claim that the Indian government wants to make an example out of him and will seek him out because he is a former national wrestler. As the board noted, the Petitioner never asserted this during his testimony that any of his arrests or detainments were related to his athletic status. He testified to being able to speak Hindu, having ties to the UP and Delhi, which further support the conclusion that he could safely relocate elsewhere in India. Given these facts, the government clearly rebutted the presumption of well-founded fear by substantial evidence in the record that the Petitioner could reasonably relocate within India. The Petitioner has been unable to show that it would be unreasonable for him to relocate within India. As I stated earlier, the Petitioner was arrested twice and beaten on two occasions. Although he sought medical attention after being beaten, he did not indicate that he suffered any lasting injuries from the incident. In fact, he did not leave India for several years after his second arrest and stated that he hoped this situation there would return to normal. This clearly undermines his claim that his persecution was so atrocious and that returning to India would be inhumane and that he would be unable to relocate within India. Okay. Thank you. Thank you for your argument. Thanks for coming in today. And it may be that we'll give you an opportunity to provide those record sites and the Petitioner an opportunity to respond to them. Thank you. Counsel? Your Honor, briefly I would like to submit that there's no evidence in the record that Petitioner, while in Dupuy, was freely moving. He was restrained at a particular place. Four years, he lived with his friend, where he married with his sister. Presently, Your Honor, I believe the record would reflect that they are separated. Did he testify that during these periods he was in hiding? He was, Your Honor. That's my understanding, that he was lived with his friend for four years and worked at his farmhouse. Did he work? He worked at his farmhouse, Your Honor. He helped his friend in the business of farming. And did he wrestle? No, Your Honor. There's no evidence that he was even ever left the farm until 1999, when he went to New Delhi to attend the funeral of his wrestling coach. He lived there, and in fact, he hid himself there for four and a half years. At present, Your Honor, Petitioner has two children. They're born in the United States. And judge did not consider that factor. Petitioner will be separated from his children if he's deported back to India. Are you making a hardship exemption argument to us? Is that what this is? No, Your Honor. I'm attempting to give this effect consideration, which the IJA did not. This is part of his claim, Your Honor. This is part of his life. But that's a hardship claim. That's a claim that you have to make to the immigration judge because it's totally discretionary as to the attorney general, is it not? Your Honor, if he moves to India, he may decide to take his children. Counsel, we're just talking about our power as an appellate court here. We don't decide hardship claims. We don't have the authority to do that, do we? I don't think so, Your Honor. I agree with that. So this was just kind of thrown in for flavor to get the full feel of the case. Your Honor, his status as a wrestler of international status is also problematic, Your Honor. He may be easily exposed to the authorities. If he starts moving as a regular person, he may be ---- And where does that come from? Does it come from his wrestling activities while he was in Punjab? Your Honor, he was a wrestling player, and he went to Japan. That's part of the testimony. When? That's why I'm trying to ---- You've got me confused as to when he was a wrestler and ---- You know, he went to Japan, I believe, somewhere around 1982. He also came to the United States. And he was helping other wrestlers at New Delhi. Through the entire period of time? Until, Your Honor, he started having trouble with the police. He was helping his coach in New Delhi. Okay. Wait. I need a date. That was, Your Honor, from 1982 to 1984 or so. Okay. So before he relocated. Correct, Your Honor. And the record does not show that he engaged in any wrestling activities after he relocated to Delhi. That's correct, Your Honor. Okay. All right. Okay. Thank you. Thank you both for your arguments. Appreciate it. The case just argued will be submitted for decision.
judges: Schroeder, Ikuta, Hawkins